# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| LONNIE FRERICKS,<br>　　　　　Appellant, | DOCKET NUMBER<br>PH-0752-20-0355-I-1 |
| 　　　v. | |
| DEPARTMENT OF THE NAVY,<br>　　　　　Agency. | DATE:　April 5, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Richard R. Renner, Esquire, Silver Spring, Maryland, for the appellant.

Luke K. McPherson, Indian Head, Maryland, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to expand upon and clarify the administrative judge's analysis regarding whistleblower reprisal and disability discrimination, we AFFIRM the initial decision.

The following facts, as further detailed throughout the record and the initial decision, appear to be undisputed. The appellant most recently held the position of Technician in the agency's Explosive Ordnance Disposal (EOD) Department, working at a facility in Indian Head, Maryland. Initial Appeal File (IAF), Tab 35, Initial Decision (ID) at 2. In February 2020, the agency proposed his removal from service for "unacceptable conduct." IAF, Tab 4 at 31-45.

The proposal included a lengthy narrative surrounding three incidents or specifications. *Id*. at 31-34. Chronologically, the first alleged that the appellant had a verbal altercation with a coworker on January 2, 2019, resulting in a bullying accusation consistent with other employees' reported fears of the appellant. *Id*. at 34. The second alleged that the appellant had a verbal altercation with another coworker on and around June 4, 2019, which included the appellant getting in the coworker's face and making demeaning comments. *Id*. at 33. The third alleged that the appellant had an altercation with his supervisor on October 24, 2019, which culminated with the appellant punching his computer screen and desk, and yelling at his supervisor while standing just inches from the supervisor's face. *Id*. at 32. The deciding official sustained the removal, finding all the specifications proven. IAF, Tab 5 at 42-56.

The appellant filed the instant appeal to challenge his removal. IAF, Tab 1. After developing the record and holding the requested hearing, the administrative judge sustained the action. *E.g.*, Hearing Transcript, Volume 1 (HT1); Hearing Transcript, Volume 2 (HT2); Hearing Transcript, Volume 3 (HT3).[2] She first found that the agency proved its specifications and charge. ID at 4-9 (October 24 incident), 9-16 (June 4 incident), 16-20 (January 2 incident and accompanying reports). The administrative judge next found that the appellant failed to prove his claims of disability discrimination, ID at 21-24, or reprisal for equal employment opportunity (EEO) activity, ID at 24-27.

Regarding his whistleblower reprisal claim, the administrative judge found that the appellant met his burden of proving that he engaged in some protected disclosures and activities but failed to meet his burden for others. ID at 27-35. Of those that remained, the administrative judge found that the appellant proved some, but not all, were a contributing factor in his removal. ID at 35-38. She then shifted the burden and found that the agency met its burden of rebutting the appellant's prima facie case of reprisal. ID at 38-40.

The administrative judge also found that the appellant failed to prove his harmful error claim. ID at 40-45. Finally, the administrative judge found that the agency proved the nexus requirement, as well as the reasonableness of its penalty. ID at 45-48.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 12.[3] After a lengthy description of background information, *id*. at 13-39, and a statement of the case, *id*. at 39-42, the appellant's petition presents several specific legal arguments, none of which concern the agency's

[2] We note that volumes 1 & 3 of the transcript are the reverse of what might be expected. Volume 1 details the third day of the hearing while volume 3 details the first day of the hearing.

[3] The appellant requested and received multiple extensions, so his petition is timely, despite appearing otherwise. PFR File, Tabs 2, 4, 6. The appellant also requested and received permission to submit a petition that is nearly double the Board's ordinary length limitation. PFR File, Tab 10.

proof of its charge. Instead, the appellant reasserts his claims of harmful procedural error, *id*. at 42-43, whistleblower reprisal, *id*. at 43-68, and disability discrimination. *Id*. at 68-70. The appellant also challenges the reasonableness of the penalty, *id*. at 70-71, and the administrative judge's decision to disallow certain witnesses, *id*. at 71. The agency has filed a response to the appellant's petition,[4] to which the appellant has replied.[5] PFR File, Tabs 15, 25.[6]

<u>The appellant failed to prove his harmful error claim.</u>

As previously noted, the administrative judge found that the agency proved its charge, and the appellant has not substantively challenged those findings on review. Accordingly, our analysis will begin where the appellant's petition began —with his harmful procedural error affirmative defense.

---

[4] The agency's response appeared to be untimely by a day. *Compare* PFR File, Tab 14 (indicating that the filing deadline was October 11, 2021), *with* PFR File, Tab 15 (agency's response filing, submitted on October 12, 2021). But, as the agency has correctly noted, October 11, 2021, was a Federal holiday. PFR File, Tab 19. Therefore, we find the response timely, pursuant to 5 C.F.R. § 1201.23.

[5] The appellant requested and received permission to submit a reply that exceeded the Board's length limitations. PFR File, Tab 24.

[6] The appellant has requested leave to submit a motion to strike evidence included in the agency's response brief about the appellant's harmful error claim. PFR File, Tab 21. He asserts that the evidence should have been submitted below, not on review. *Id*. The agency has requested leave to respond to the appellant's reply brief because it contained new arguments. PFR File, Tab 27. The appellant filed a pleading in opposition. PFR File, Tab 29.

Both parties' requests for leave to submit further pleadings are denied. We will not consider the evidence included with the agency's response brief. It was submitted for the first time on review, without any indication that it was previously unavailable. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (recognizing that, under 5 C.F.R. § 1201.115, the Board will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence). Plus, the evidence is not necessary to our conclusion that the appellant's harmful error claim is unavailing. We also will not consider any arguments contained in the appellant's reply brief that exceed the bounds of the agency's response. *See* 5 C.F.R. § 1201.114(a)(4) (providing that a reply to a response to a petition for review is limited to the factual and legal issues raised by another party in the response to the petition for review; it may not raise new allegations of error).

Reversal of an action for harmful error is warranted where a procedural error likely had a harmful effect upon the outcome of the case before the agency. *Henton v. U.S. Postal Service*, 102 M.S.P.R. 572, ¶ 15 (2006). Harmful error cannot be presumed, and the burden of showing harmful error lies with the appellant. *Id*. To show harmful error, an appellant must prove that any procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Id*.

Within the proposal to remove the appellant, the agency included an analysis of the factors considered for deciding on a penalty. IAF, Tab 4 at 34-39. Among other things, this analysis described his past disciplinary record as including letters of reprimand in September 2010 and June 2015, along with several other less formal interventions. *Id*. at 36.

Broadly speaking, the appellant's harmful error claim concerns his ability to review those September 2010 and June 2015 reprimands before the deciding official issued her decision—reprimands that the appellant has since disputed in terms of authenticity or applicability. *E.g.*, ID at 44-45; PFR File, Tab 12 at 42-43. The administrative judge was not persuaded. She provided a detailed accounting of the parties' extensive communications during this response period, which included the agency's instructions for obtaining all the materials relied upon, the appellant's admitted failure to follow those instructions, and the appellant's apparent request for other materials outside the proper channels. ID at 40-43. The administrative judge also noted that the deciding official testified that she did not review the appellant's past reprimands or rely upon them in reaching her decision. ID at 45.

On review, the appellant argues that the agency's instruction for obtaining materials relied upon for the proposed removal—which consisted of calling a particular individual by a phone number provided—amounted to an impermissible "hurdle." PFR File, Tab 12 at 42. The appellant further argues that the harm

from this was evident because the administrative judge faulted the appellant for failing to review and challenge the reprimands during the response period. *Id*.

We are not persuaded. Even if we were to find that the circumstances amounted to an agency error, the appellant's argument about the resulting harm is misplaced. The appellant's petition contains no argument that the agency would have reached a different conclusion if it had not erred in the way the appellant has alleged. To the contrary, the deciding official's testimony, as recounted in the initial decision, indicates that the agency would have reached the same conclusion, since she did not rely on either of the reprimands the appellant now disputes. ID at 45.

The appellant made some disclosures protected under section 2302(b)(8) and engaged in some activity protected under section 2302(b)(9).

Pursuant to the Whistleblower Protection Enhancement Act of 2012 (WPEA), to prevail on a prohibited personnel practice affirmative defense in a chapter 75 appeal that independently could form the basis of an individual right of action appeal, the appellant must first demonstrate by preponderant evidence that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that the disclosure or activity was a contributing factor in the adverse action. *See Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 12-13 (2015) (recognizing that, under the WPEA, an appellant may raise an affirmative defense of whistleblower retaliation based on protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D)); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19 (2013) (stating the foregoing proposition concerning disclosures protected by 5 U.S.C. § 2302(b)(8)). If the appellant meets this burden, then the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosure or activity. *Alarid*, 122 M.S.P.R. 600, ¶ 14.

The administrative judge addressed the following disclosures or activities in concert with the appellant's whistleblower reprisal claim:

Disclosure 1 – mismanagement of funding for improvised nuclear device (IND) countermeasures,

Disclosure 2 – the dumping of beryllium tools in a river,

Activity 3 – an EEO complaint that alleged whistleblower reprisal pertaining to Disclosure 1,[7]

Disclosure 4 – misuse of the agency's 3D printer,

Disclosure 5 – safety concerns surrounding the fumes caused by the installation of foam tiles, and

Disclosure 6 – his supervisor's fishing during a work trip.

ID at 29-35. The administrative judge found that the appellant met his burden of proving that Disclosure 1, Disclosure 2, Activity 3, and Disclosure 5 were protected, but failed to do the same for Disclosure 4 or Disclosure 6. ID at 29-35. The appellant disagrees with respect to Disclosures 4 and 6, while also arguing that the administrative judge ignored some other protected activities. PFR File, Tab 43-45. We will address each in turn.

*Disclosure 4*

On review, the appellant describes Disclosure 4 as consisting of him asking a coworker, "Hey [], when [were] you going to tell me you broke the printer?" PFR File, Tab 12 at 43. This question occurred at the start of the January 2, 2019 altercation underlying the agency's removal action. *See, e.g.*, IAF, Tab 4 at 34, Tab 5 at 63-65; ID at 16-20.

---

[7] When discussing this matter, the administrative judge correctly referenced the WPEA provision that protects an individual such as the appellant from reprisal for "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation, [] with regard to remedying a violation of [section 2302(b)(8)]"). ID at 33; 5 U.S.C. § 2302(b)(9)(A)(i). However, the initial decision otherwise described the appellant's EEO complaint alleging whistleblower reprisal as a "protected disclosure." ID at 33-34. To be most accurate and clear, we are labeling the matter as "Activity 3," rather than "Disclosure 3," since this is an activity protected under section 2302(b)(9)(A)(i), rather than a disclosure protected under section 2302(b)(8).

A protected disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013). A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A). *Id*. The appellant need not prove that the matter disclosed actually established one of the types of wrongdoing listed under section 2302(b)(8)(A); rather, the appellant must show that the matter disclosed was one which a reasonable person in his position would believe evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). *Id*.

The administrative judge found that the appellant failed to prove Disclosure 4 was protected because he did not establish that there was any related agency rule and because the appellant had asked the coworker a question, rather than disclosing the type of wrongdoing covered under the statute. ID at 34. The appellant disagrees, pointing us to hearing testimony. PFR File, Tab 12 at 25-27, 43-44 (referencing HT2 at 94-95, 182-83; HT3 at 94, 102). According to the appellant, this hearing testimony proved that his coworker "violated workplace rules about getting training and permission to use the 3D printer and to report damage to that printer." *Id*. at 43.

We are not persuaded. Despite the appellant's suggestion to the contrary, his question did not clearly implicate any identifiable violation of law, rule, or regulation. *Compare Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 6 (2016) (recognizing that disclosures must be specific and detailed, not vague allegations of wrongdoing), *with Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 24 (2015) (recognizing that an individual need not identify a statutory or regulatory provision by a particular title or number "when the

statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation") (quoting *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001)).

The hearing testimony the appellant has cited, including his own, shows that the appellant had some informal authority regarding care for the 3D printer. HT2 at 94-95 (testimony of Technician), 182-83 (testimony of the appellant); HT3 at 94, 102 (testimony of Branch Manager). But other evidence, including the appellant's response to his proposed removal, shows that the coworker contacted "the Code D25 lead when it comes to the 3D printers" as the malfunction occurred, who relayed the information to the appellant, leading to the appellant's alleged disclosure 2 days later. IAF, Tab 5 at 28, 63. According to subsequent notes from interviews with the appellant, the coworker, and their differing supervisors about the confrontation, the cause of the malfunction was unknown. *Id*. at 63. The notes further indicate that written instructions would be added near the 3D printer, indicating that any future malfunction should be reported to the appellant, presumably because there were no such instructions at the time. *Id*. at 64.

These circumstances show that the appellant did not have a reasonable belief that he was making the type of disclosure protected by the whistleblower statute as he asked, "when [were] you going to tell me you broke the printer?" This is particularly so because the coworker was not within the same chain of command as the appellant, there was no written or otherwise clearly established and implicated rule about the 3D printer at the time, and the appellant knew that the coworker had immediately alerted a third party about the printer's malfunction, who then relayed the information to the appellant. The coworker did not hide the malfunction, leave it to languish, or engage in any other impropriety. The appellant's reliance on cursory testimony indicating that individuals were supposed to "go through" him for 3D printing or "let [him] know" in the case of a malfunction do not persuade us otherwise. *E.g.*, HT2 at 95

(testimony of Technician); HT3 at 94 (testimony of Branch Manager). When the appellant asked his coworker about the 3D printer, he may have been vaguely implying some sort of wrongdoing, and he was certainly initiating what would become some of the misconduct relied upon in this removal action. He was not, however, making a protected disclosure.

*Disclosure 6*

To recall, the appellant's removal was also based on an altercation he had with his first-line supervisor, on October 24, 2019, which stemmed from the supervisor taking a project away from the appellant. *Supra* p. 2. Later that day, the first-line supervisor emailed the appellant. Among other things, this email message reiterated that he was taking the project away from the appellant because he did not find the appellant's work on the matter acceptable. IAF, Tab 30 at 7.

In an email response, the appellant copied several management officials. *Id*. at 6. Among other things, the appellant asserted that his supervisor had failed to provide any guidance for the project, so he had performed under the guidance he received from others during a conversation in which the supervisor was not involved, "because [the supervisor] left before noon to go fishing (having spent only 2 hours with the warfighter) on what was supposed to be a two-day trip to Virginia Beach." *Id*. at 6. That statement about his supervisor fishing is Disclosure 6.

The circumstances surrounding this disclosure are further detailed in the initial decision. ID at 7-9, 34-35. Generally speaking, the appellant and his first-line supervisor had attended a meeting in Virginia Beach. ID at 7, 9. The appellant drove home after the meeting. *Id*. His first-line supervisor, who had a longer drive ahead of him, did not. Having driven 5 hours to Virginia Beach and attended the 2-hour meeting, the appellant's supervisor stuck with his previously made plan to stay overnight and drive home the next day. ID at 7. The limited but seemingly uncontradicted evidence about the remainder of the supervisor's day was testimony indicating that he teleworked for 1 additional hour, before

fishing off a local pier during his off-duty time. HT3 at 25 (testimony of deciding official), 125 (testimony of supervisor).

The administrative judge did not find Disclosure 6 protected. ID at 34-35. Among other things, she noted that the appellant's subsequent descriptions about the disclosure, while facing removal, grossly overstated its actual contents. ID at 7-8, 35; *see* IAF, Tab 5 at 31, 34. She also found the first-line supervisor's testimony about the trip credible, while the appellant's disclosure and subsequent statements about the matter were inconsistent and embellished. ID at 9, 34-35.

On review, the appellant has characterized Disclosure 6 as protected because it revealed time and attendance fraud. PFR File, Tab 12 at 45. In his brief argument about the same, the appellant asserts that the administrative judge improperly relied on the timing and motive for the disclosure to find that it was not protected. *Id.* (citing 5 U.S.C. § 2302(f)(1)(C), (G) (providing that a disclosure is not excluded from protection because of an individual's motive or the time passed since the alleged wrongdoing)). We disagree.

The administrative judge did not find that the appellant's motive or timing precluded him from proving that Disclosure 6 was protected. She instead found that the appellant's motive, timing, and other circumstances showed that he did not have a reasonable belief that he was disclosing the type of wrongdoing covered by the whistleblower statute. *See, e.g.*, *Ayers*, 123 M.S.P.R. 11, ¶ 20 (recognizing that a disclosure is not excluded from protection based on an appellant's motive in making it, but motive may be relevant to the determination of a reasonable belief). Among other things, the circumstances included his actual disclosure, followed by his inconsistent recasting of the disclosure as revealing something more nefarious, without any substantive support. Put another way, although the appellant has now characterized his disclosure as one of time and attendance fraud, he has not directed us to any reason why he would have believed that the supervisor engaged in fraud, as opposed to him following whatever time, attendance, travel, or telework rules might apply to the

circumstances—where the supervisor had driven 5 hours to attend a 2-hour meeting and would need to drive back either the same day or the next. *See, e.g.*, *Ramos v. Department of the Treasury*, 72 M.S.P.R. 235, 240-41 (1996) (finding that an individual's disclosure was based purely on speculation, not a reasonable belief of illegal activity, so it was not protected); *Sobczak v. Environmental Protection Agency*, 64 M.S.P.R. 118, 122 (1994) (an appellant's disclosure does not satisfy the reasonable belief requirement if he is merely reporting unsupported speculation). Accordingly, we agree with the administrative judge's determination that the appellant failed to meet his burden for Disclosure 6.

*Additional activities*

The appellant's petition for review next includes a single paragraph, asserting that the administrative judge ignored additional activity protected by section 2302(b)(9). PFR File, Tab 12 at 45. He describes this as including his:

Refusing to falsify his travel record to support the 2-day trip to Virginia Beach;

Refusing to work around the noxious fumes caused by the installation of foam tiles;

Participating in an NCIS investigation; and

Participating in his EEO claim.

*Id*. As further detailed below, we are not persuaded.

Section 2302(b)(9)(D) protects an individual such as the appellant from reprisal for their "refusing to obey an order that would require the individual to violate a law, rule, or regulation." 5 U.S.C. § 2302(b)(9)(D). Citing that provision, the appellant asserts that he engaged in protected activity by refusing to falsify his travel record and by refusing to work around noxious fumes. PFR File, Tab 12 at 45. Yet, regarding his purported refusal to falsify a travel record, the appellant does not refer us to any supportive evidence. *Id*. (referencing ID at 7). Instead, the appellant has merely alluded to the administrative judge's discussion of how the appellant's testimony and written statements about the

circumstances surrounding the Virginia Beach trip were inconsistent and not credible. ID at 7-9. Without more, we will not pour over the voluminous record in search of preponderant evidence that the appellant received and refused to obey an order to falsify his travel record. *See* 5 C.F.R. § 1201.114(b) (providing that a petition for review should include all of a party's factual and legal arguments, and it must be supported by specific references to the record). This is particularly so because the administrative judge did not find the appellant's version of events surrounding this incident credible, and those findings are entitled to deference. *See Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016) (concluding that the Board must defer to an administrative judge's credibility determinations even when she relies on demeanor "by necessary implication"); *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (explaining that the Board must defer to an administrative judge's credibility determinations when, as here, they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so).

Similarly, the appellant's assertion that he refused to work around noxious fumes caused by the installation of foam tiles is unavailing. He has merely referred to us a statement of facts from his attorney, which does not constitute preponderant evidence. PFR File, Tab 12 at 45 (referencing IAF, Tab 16 at 10-11); *see Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995) (finding that statements of a party's representative in a pleading do not constitute evidence). Moreover, although the appellant has repeatedly described his concerns about the noxious fumes, we found no reason to find that the appellant "refus[ed] to obey an order that would require [he] violate a law, rule, or regulation" in connection with the fumes. 5 U.S.C. § 2302(b)(9)(D). We also note that this allegation goes hand in hand with Disclosure 5, which the administrative judge found protected. The appellant has not explained, and we

discern no reason, why protection under sections 2302(b)(8) and 2302(b)(9)(D) for the same basic set of facts would warrant a different result than protection under only the former provision. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

Regarding the appellant's assertion that "[h]is participation in the NCIS investigation is protected by 5 U.S.C. § 2302(b)(9)(C)," PFR File, Tab 12 at 45, the appellant has provided no argument and no reference to the record. Accordingly, the bare assertion is unavailing. To the extent the appellant is referring to the contact he had with NCIS about Disclosure 1, as discussed in the initial decision, *e.g.*, ID at 30-31, the administrative judge found this set of disclosures protected by section 2302(b)(8) and it is not apparent how protection under section 2302(b)(9)(C), if warranted, would require any different result in this appeal.

Regarding the appellant's assertion that "his participation in his EEO case is protected by 5 U.S.C. § 2302(b)(9)(A)(i) because it alleged retaliation," PFR File, Tab 12 at 45, again the appellant provides no further argument and no reference to the record. He has not, for example, identified the EEO complaint to which he may be referring, nor has he provided us with any showing that it sought to remedy an alleged violation of section 2302(b)(8), as required under the provision he cited. As we previously noted, the administrative judge characterized one EEO complaint by the appellant as a "protected disclosure," when it is more accurately described as protected activity under section 2302(b)(9)(A)(i). *Supra* note 7. If this is the EEO complaint to which the appellant is alluding, the administrative judge did not ignore the matter. She found it protected. Accordingly, we will not address the appellant's assertion any further.

<u>The appellant established the contributing factor criterion for Disclosure 5, but no other protected disclosure or activity.</u>

The administrative judge found that although the appellant proved that Disclosure 1, Disclosure 2, and Activity 3 were protected, he did not prove that they were a contributing factor in his removal.[8]  ID at 35-37.  For Disclosure 5, the administrative judge did not explicitly state that the appellant proved the contributing factor element, but she seemed to imply as much.  ID at 37-38; *see Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 28 (2016) (recognizing that it is inappropriate for an administrative judge to determine whether an agency can meet its burden in a whistleblower reprisal claim unless the appellant has first met his burden of establishing a prima facie case).  As further detailed below, we modify the initial decision to explicitly find that the appellant proved the contributing factor criterion for Disclosure 5, but no other protected disclosure or activity.

*Contributing factor – Disclosure 5*

One way to establish the contributing factor criterion is the knowledge/timing test, under which an employee may establish that his protected disclosure or activity was a contributing factor in the contested personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure or activity, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Salerno*, 123 M.S.P.R. 230, ¶ 13.  If an appellant fails to satisfy the knowledge/timing test, the Board must consider other evidence, such as that

---

[8] We recall that Disclosure 1 concerned the alleged mismanagement of funds for improvised nuclear device (IND) countermeasures, while Activity 3 was an EEO complaint that alleged reprisal for Disclosure 1.  *Supra* p. 7.  The administrative judge did not distinguish between the two when analyzing the contributing factor element of the appellant's burden; she instead referred only to "disclosures regarding the IND countermeasures funding."  ID at 36.  It seems apparent, though, that her analysis and conclusion applied to both, consistent with her prior description of both as "protected disclosures."  ID at 33-34, 36; *supra* p. 7.

pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding official, and whether those individuals had a desire or motive to retaliate against the appellant. *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 26 (2013).

Although the administrative judge did not explicitly find that the appellant proved the contributing factor criterion for Disclosure 5, we do. This set of disclosures consisted of the appellant voicing concerns about toxic fumes that were being generated during the installation of some foam panels in an area near his workspace, causing him headaches and possibly endangering others as well. *E.g.*, IAF, Tab 5 at 60-61. The administrative judge provided an extensive discussion of the surrounding circumstances, including both the appellant's disclosures and his surrounding conduct, some of which the agency relied on for its removal action. *E.g.*, ID at 9-16. Among other things, she correctly noted that the appellant made the disclosure and then relayed it to multiple people, including his first-line supervisor and the proposing official, all within months of his proposed removal. IAF, Tab 4 at 31, Tab 5 at 61. Accordingly, we find that the knowledge/timing test is satisfied for Disclosure 5, thereby proving that it was a contributing factor in the appellant's removal.

*Contributing factor – Disclosure 1, Disclosure 2, & Activity 3*

The administrative judge found that the appellant did not prove the contributing factor criterion for Disclosure 1, Disclosure 2, or Activity 3. ID at 36-37. In doing so, she noted that each occurred 5 or more years prior to his removal, and she found that the appellant failed to establish any connection between them and the individuals involved in his removal. *Id*.

On review, the appellant presents several arguments about his burden of proving contributing factor. PFR File, Tab 12 at 45-57. He first argues that the administrative judge erred by assessing contributing factor for each of his protected disclosures or activities, individually, rather than doing so collectively.

*Id*. at 46-47. However, the appellant has not identified any persuasive support for analyzing his claim in that way. He has instead referred us to a single Circuit Court decision, which concluded that several discrete acts should be considered together for purposes of deciding whether an individual had engaged in the kind of activity covered under the opposition clause of Title VII. *Id*.; *Demasters v. Carilion Clinic*, 796 F.3d 409, 416-17 (4th Cir. 2015). That conclusion is unrelated to the WPEA and its contributing factor requirement. Under the burden shifting scheme of a WPEA, the Board analyzes the contributing factor element for each protected disclosure or activity, individually. *See, e.g.*, *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 32 (2014) (remanding an appeal with instructions that, for each disclosure the administrative judge finds protected, she must then determine whether the disclosure was a contributing factor in the contested personnel action).

The appellant next references portions of the proposal and the decision letters for his removal, along with hearing testimony, which described him as having a history of outbursts or interpersonal conflicts dating back many years prior to the charged misconduct underlying the removal action. PFR File, Tab 12 at 46-51. To the best that we understand, the appellant is arguing that we should construe those references as including his protected disclosures or activities, thereby satisfying the contributing factor element of his burden. *Id*. However, we are not persuaded. Although the appellant pointed us to general references that he had a history of behavior that the agency found objectionable during the time that preceded the charged misconduct, he has not pointed us to any instance of that encompassing any of his protected disclosures or activities, and we will not make assumptions about the same.

Relatedly, the appellant recounts how the agency described the misconduct cited in its charge as disruptive and causing others to feel unsafe around him. PFR File, Tab 12 at 51-55. He then suggests that this proves the contributing factor element or his reprisal claim, generally, because whistleblowing is

inherently disruptive. *Id*. Again, we are not persuaded. Despite the appellant's suggestion to the contrary, we find no reason to conclude that the agency's stated opposition to the disruption and fear caused by the appellant's conduct—which culminated with his angrily punching equipment and then getting within inches of his supervisor's face while yelling—meaningfully adds to his burden of proving the contributing factor criterion or his reprisal claim. *See generally Hamilton v. Department of Veterans Affairs*, 115 M.S.P.R. 673, ¶ 12 (2011) (recognizing that a disclosure is still entitled to protection if stated bluntly, but this is not a general license for bad behavior—the character and nature of the disclosure can still be a legitimate basis for discipline).

The appellant's remaining arguments concerning the contributing factor element are similarly unavailing. PFR File, Tab 12 at 54-57. For example, the appellant further suggests that we should find the knowledge/timing test satisfied for purposes of Disclosure 1, Disclosure 2, & Activity 3, all of which occurred many years before his removal, simply because the knowledge/timing test is satisfied for Disclosure 5. *Id*. at 54-55. He also characterizes his employment history as including a pattern of antagonism spanning his years of protected disclosures and activity, and he contends that the agency deviated from normal practices with respect to his removal. *Id*. at 55-56. Although we have considered each of the appellant's contributing factor arguments, we do not find them persuasive. The appellant established a prima facie case of reprisal with respect to Disclosure 5, but he failed to do so for any other disclosure or activity.

<u>The agency proved that it would have removed the appellant in the absence of Disclosure 5.</u>

After finding that the appellant presented a prima facie case of whistleblower reprisal concerning Disclosure 5, the administrative judge shifted the burden and found that the agency proved that it would have taken the same removal action against the appellant in the absence of his protected disclosure.

ID at 38-40. On review, the appellant challenges this finding. PFR File, Tab 12 at 57-68.

In determining whether the agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of a protected disclosure, the Board generally will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency's officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in whistleblowing but who are otherwise similarly situated. *See Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board must consider all pertinent record evidence in making this determination. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 11 (2010). Rather, the Board will weigh the factors together to determine if the evidence is clear and convincing as a whole. *Id*.

Although the administrative judge acknowledged the applicable standard, she provided only a brief analysis that does not explicitly address any of the *Carr* factors. ID at 38-40. Accordingly, we modify the initial decision by supplementing the analysis as follows.

The agency's evidence in support of its removal action, which was based on incidents in January, June, and October 2019, is strong. While sustaining the agency's charge, the administrative judge described the various documentary and testimonial evidence pertaining to each incident. ID at 4-9 (October 24 incident), 9-16 (June 4 incident), 16-20 (January 2 incident and accompanying reports). Among other things, this included contemporaneous documentation about each, reflecting a pattern of increasingly discourteous, aggressive, and even violent behavior by the appellant. IAF, Tab 4 at 46-47, Tab 5 at 12-18, 58-59, 63-64.

We recognize that only one of the three individuals targeted by the appellant's conduct during these incidents testified at the hearing, but each lodged a complaint about the appellant and cooperated in the agency's investigations of the matters at the time. *See Phillips*, 113 M.S.P.R. 73, ¶ 12 (explaining that, when applying the first *Carr* factor, the Board will consider the weight of the evidence that was before the agency when it acted). Plus, the appellant's responses to these incidents largely deflected blame rather than substantively or persuasively denying that he had engaged in the alleged misconduct. IAF, Tab 5 at 25-38, 60-62. To the extent that the appellant did dispute the alleged misconduct, the administrative judge made well-reasoned credibility findings in favor of the agency's version of events, rather than the appellant's, which we adopt. ID at 4-20.

Conversely, the evidence suggests that the motive to retaliate was not particularly strong. Disclosure 5 consisted of the appellant expressing safety concerns about the 2- or 3-day installation of foam panels near his workspace, as it related to remedial measures for ventilating the fumes caused by an adhesive. *E.g.*, IAF, Tab 5 at 12-18, 60-62. This set of disclosures was primarily directed at a coworker overseeing the project, under a different chain of command, who had accommodated remedial measures for the fumes that the appellant deemed inadequate. *Id*. at 60-62. Nonetheless, this set of disclosures implicated management as well, including the proposing and deciding officials, who the appellant described as ignoring his complaints. *Id*. at 61. However, by the appellant's own telling, it seems as if everyone implicated by Disclosure 5 either disagreed with appellant and thought the remedial measures implemented for the fumes were sufficient, or they had minimal interest in the matter. *Id*. at 60-61. The evidence of record does not suggest that they were concerned or had reason to be concerned that Disclosure 5 cast them in an especially unfavorable light. In other words, the record supports a conclusion that Disclosure 5 might cause some

motive to retaliate, but not so much so that it causes us to doubt that the agency's removal action.

As for evidence that the agency takes similar actions against employees who did not engage in whistleblowing but who are otherwise similarly situated, there appears to be none. When testifying about the choice of penalty, the deciding official testified that she was not aware of anyone similarly situated. HT3 at 31 (testimony of deciding official). Accordingly, this factor is not a significant one. *Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶ 20 (2016).

As supplemented by this analysis to further consider and weigh these factors, we agree with the administrative judge's conclusion that the agency met its burden. It proved by clear and convincing evidence that it would have taken the same removal action in the absence of the appellant's protected disclosure, given the strength of its evidence showing a pattern of increasingly unacceptable behavior and limited motive to retaliate.

We have considered each of the appellant's numerous arguments to the contrary, but we are not persuaded by any. For example, the appellant faults the agency for not calling some witnesses, including the targets of his discourteous behavior for the January and June incidents, during his Board appeal. PFR File, Tab 12 at 57-58. But this erroneously conflates the strength of the agency's evidence in support of its removal action, at the time, with the evidence it put on to prove its charge before the Board. *Phillips*, 113 M.S.P.R. 73, ¶ 12. As we have discussed, the witnesses to which the appellant is referring filed complaints about the appellant's behavior, characterizing it as harassment, bullying, and cause for concern that the appellant would turn violent. *E.g.*, IAF, Tab 5 at 12-18, 63-64.

The appellant also notes that the target of his discourteous behavior in June was similarly found to be discourteous but received no punishment at all. PFR File, Tab 12 at 58; *see* IAF, Tab 5 at 58-59. However, the appellant was not

removed because of that single incident or any single lapse in judgment—he was removed based on a pattern of behavior that culminated in his violent punching of equipment and aggressively getting in the face of his supervisor. *E.g.*, IAF, Tab 4 at 32-34, Tab 5 at 47, 52; HT3 at 14-16 (testimony of deciding official). The appellant's other arguments about the agency's burden are similarly mistaken, as they relate to other arguments we already dismissed or they are otherwise unavailing.

The appellant failed to prove his claim of disability discrimination.

The appellant characterized his disability discrimination affirmative defense, which the administrative judge found unavailing, as a failure to accommodate claim below. PFR File, Tab 12 at 68-70; ID at 21-24. However, his petition for review states that the only accommodation he needed was to not be fired. *Compare* PFR File, Tab 12 at 68-70, *with* IAF, Tab 16 at 13.

It seems that the appellant's current theory of this affirmative defense is that he was subjected to disparate treatment because the agency's removal action was based on his posttraumatic stress disorder (PTSD). PFR File, Tab 12 at 68-70.[9] It is worth noting that the appellant's final outburst, where he punched equipment and got in the face of his supervisor, occurred on October 24, 2019. *E.g.*, IAF, Tab 4 at 46. Days later, on October 31, 2019, the appellant met with a third party to discuss this and other issues. IAF, Tab 5 at 25, 35; HT2 at 208-15

---

[9] The appellant separately seems to assert that the agency erred by refusing to consider whether PTSD affected his behavior. PFR File, Tab 12 at 68-69. He quotes the deciding official, who testified that "PTSD or no PTSD or any other kind of condition, [the appellant's] behavior was unacceptable." *Id*. at 69 (referencing HT3 at 66 (testimony of deciding official)). To the extent that the appellant is suggesting that a diagnosis of PTSD could excuse his misconduct, he is mistaken. *See, e.g.*, *Burton v. U.S. Postal Service*, 112 M.S.P.R. 115, ¶ 16 (2009) (explaining that the Americans with Disabilities Act does not immunize disabled employees from discipline for misconduct, provided the agency would impose the same discipline on an employee without a disability); *Fitzgerald v. Department of Defense*, 85 M.S.P.R. 463, ¶ 4 (2000) (recognizing that an agency is never required to excuse a disabled employee's violation of a uniformly-applied, job-related rule of conduct, even if the employee's disability caused the misconduct).

(testimony of appellant). Immediately thereafter, he had a breakdown, crying, hyperventilating, and voluntarily leaving work by ambulance to seek mental health treatment. IAF, Tab 5 at 25, 35; HT2 at 208-15 (testimony of appellant).

In a letter dated the next day, November 1, 2019, the proposing official placed the appellant on administrative leave. IAF, Tab 5 at 8-9. Then, on November 4, 2019, the Commanding Officer for Naval Support Activity South Potomac barred the appellant from the facility on which he normally worked, citing an otherwise unexplained "pending investigation." *Id*. at 10. He renewed that prohibition 20 days later, citing the appellant's "threatening actions, anger management issues, self-admitted [PTSD], and severe anxiety." *Id*. at 11.

The proposing official then issued its proposal to remove the appellant a couple of months later, in February 2020. IAF, Tab 4 at 31. While discussing the events of October 24, 2019, the proposal recognized the events that followed, including the appellant's emotional breakdown, without mentioning any health condition. *Id*. at 32-33. But the appellant explicitly discussed PTSD in his response to the proposed removal, indicating that he had just begun counseling for the same. IAF, Tab 5 at 36.

As best as we understand his arguments on review, the appellant is asserting that if it were not for his emotional breakdown and associated disclosure of his PTSD, the Commanding Officer for Naval Support Activity South Potomac would not have barred him from the base and the proposing and deciding officials would not have moved forward with his removal.[10] PFR File, Tab 12 at 68-70.

The administrative judge concluded the record did not show that his removal was based on any disability, or that he was medically unable to perform in his position. ID at 22-23. She further concluded that the appellant failed to

---

[10] Below, the administrative judge considered the appellant's PTSD, but also his reported hypertension and hearing loss with tinnitus. ID at 22-23. However, the appellant's petition exclusively relies on his PTSD. PFR File, Tab 12 at 68-70. He seems to have abandoned any argument about hypertension or hearing loss having any relation to his removal or disability discrimination claim. *Id*. Accordingly, our analysis is similarly focused on PTSD.

prove that he was actually disabled or regarded as disabled. ID at 23-24. Specific to PTSD, the administrative judge indicated that the appellant presented a Department of Veterans Affairs decision, from 2007, giving him a 10% service-connected disability rating for "PTSD with insomnia," but no treatment records or other documentation. *Id*. at 22, 24; IAF, Tab 26 at 10-12.

As further detailed below, we vacate the administrative judge's finding that the appellant did not have a disability. We instead find that, even if the appellant had a disability, as that term is defined by the statute, the appellant failed to meet his burden of proving that a disability was a motivating factor in his removal.

To prove his disability discrimination claim, the appellant must first establish that he is an individual with a disability as that term is defined in the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) and Equal Employment Opportunity Commission regulations. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 37. He may prove that he has a disability by showing that he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. *Id*. (citing 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1)). The determination of whether a condition is substantially limiting is made by comparing the ability of the allegedly disabled individual to "most people in the general population." *Id*. (citing 29 C.F.R. § 1630.2(j)(1)(ii)). The "substantially limits" standard is not "demanding," and is intended to "be construed broadly in favor of expansive coverage." *Id*. (citing 29 C.F.R. § 1630.2(j)(1)(i)).

Again, for the asserted PTSD, the record includes the 2007 service-connected disability decision from the Department of Veterans Affairs, which indicates that the appellant had once received 4 months of pharmacological treatment, but none other. IAF, Tab 26 at 12. Then, in his response to the proposed removal in 2020, the appellant indicated that he had just started his first-ever counseling for PTSD. IAF, Tab 5 at 36.

The appellant provided further explanation of his PTSD at the hearing. *E.g.*, HT2 at 103 (testimony of appellant). Among other things, he described this condition as associated with the trauma of his past work investigating mass casualty events caused by improvised explosive devices. *Id*. at 103-06. The appellant characterized his PTSD as including sleeplessness, flashbacks, and short-temperedness. *Id*. at 106-08.

We recognize that the administrative judge found the appellant's testimony not credible in many regards, including his claims about a hearing impairment. *E.g.*, ID at 6, 8-9, 16, 22-23. However, she did not make explicit credibility findings concerning the appellant's testimony about PTSD. Accordingly, the record seems to include limited but uncontradicted evidence of the appellant having PTSD, along with a few instances of the agency and the appellant referencing this PTSD in the period surrounding his removal.

Assuming that this suffices for purposes of establishing the appellant had a disability, as that term is defined, his burden does not end there. For a disability discrimination claim based on disparate treatment, the Board applies the same analytical framework as discrimination claims arising under Title VII. *Pridgen*, 2022 MSPB 31, ¶¶ 40, 42. The Board will first inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Id*., ¶¶ 20-21, 42. Such a showing is sufficient to establish that the agency violated the anti-discrimination law. *Id*. If the appellant meets this burden, we will then determine whether the agency still would have taken the contested action in the absence of the discriminatory motive. *Id*., ¶¶ 22, 42.

As mentioned above, the agency's second decision to prohibit the appellant from entering the facility in which he worked explicitly indicated that it was based on his "threatening actions, anger management issues, self-admitted [PTSD], and severe anxiety." IAF, Tab 5 at 11. However, the administrative judge found that there was no evidence of the proposing official, deciding

official, or anyone else at the Indian Head facility in which the appellant worked having any involvement in this decision by the Commanding Officer, Naval Support Activity South Potomac, who oversaw multiple facilities. ID at 24. Moreover, the question at hand is whether the appellant's *removal* was based on his disability, not his debarment. *Supra* p. 25. With that in mind, we find the debarment letter notable, but not dispositive.

We further find it more likely than not that the agency's removal action was exclusively motivated by the appellant's behavior. To the extent that agency officials acknowledged the appellant's PTSD in concert with his removal, they did so while recognizing that the appellant had raised the matter and while considering whether it was a mitigating circumstance. IAF, Tab 4 at 39, Tab 5 at 52-53. Conversely, the proposal and decision letters are filled with indications that the appellant's behavior over the prior decade had consisted of a pattern that included misconduct, intervention by management, a period of improvement, then more misconduct. *E.g.*, IAF, Tab 4 at 31-36. Among other things, the agency contended that this included increasingly worrisome intimidation of coworkers and supervisors alike, racial slurs, demeaning comments, yelling, anger, rage, and other indicators of potential violence. *Id.*

This is not simply announced in the proposal and decision letters. The claims are bolstered by other evidence covering many years. For example, the individual who supervised the appellant between 2015 and early 2019 testified that his troubles with the appellant began on the very first day of their supervisor/ subordinate relationship, when the appellant caused another employee to cry. HT3 at 92-93 (testimony of prior supervisor). He further testified that the appellant had "at least four" other altercations with which he had to deal. *Id.* at 93. The record also includes a memorandum from this prior supervisor, dated February 2019, indicating that he had been approached by two agency employees, one of whom was another manager, fearful that the appellant had been displaying characteristics of an active shooter. *Id.* at 94-95; IAF, Tab 5 at 65. At the

hearing, this prior supervisor responded in the affirmative when asked if he was concerned that the appellant might intentionally try to hurt his coworkers. HT3 at 111 (testimony of prior supervisor).

The appellant's subsequent supervisor—the one involved in the October 2019 incident—provided similar testimony about his relatively brief time managing the appellant. *E.g.*, HT3 at 119-20 (testimony of supervisor). He described the appellant as erratic and difficult. *Id*. at 121. Specific to the October 2019 incident, he indicated that the appellant acted in a way he had never seen in his 20-year tenure as a supervisor. *Id*. at 122-23. The supervisor further characterized the appellant as causing him fear for his physical safety and consistent with his training about actions associated with active shooters. *Id*. Similarly, the individual targeted by the appellant's ire during the June 2019 incident described the appellant as exhibiting rage that caused him concern for potential workplace violence. IAF, Tab 5 at 12.

To the extent that the appellant's immediate supervisors were questioned about the appellant having PTSD, neither provided any indication that they knew of this disability prior to him raising the matter in connection with his final act of misconduct and the resulting removal action. *E.g.*, HT3 at 98 (testimony of prior supervisor), 123-24, 126 (testimony of supervisor). The deciding official testified that the appellant's disability played no role in her decision, and she only learned of his PTSD after he was placed on administrative leave.[11] *E.g.*, *id*. at 19, 22-23 (testimony of deciding official). Her testimony is consistent with the agency finding the October 2019 incident between the appellant and his supervisor to be the most worrisome and the final straw, requiring his removal. *E.g.*, *id*. at 14-18.

Turning back to the debarment letter, the Security Director overseeing the facility in which the appellant worked testified as well. HT3 at 140 (testimony of Security Director). Among other things, he indicated that the appellant's management chain approached him in late October 2019, to describe the incident

---

[11] The proposing official did not testify. ID at 37.

involving the appellant and his direct supervisor that had just occurred. *Id*. at 140. The Security Director described elevating this issue to Naval Support Activity South Potomac—the entity responsible for the appellant's debarment from the facility—who then investigated by, *inter alia*, interviewing the appellant. *Id*. at 141-42. The Security Director attributed the appellant's initial debarment to the October 2019 altercation with his supervisor. *Id*. at 148-49. When asked about the extension of this debarment, and its reference to PTSD, the Security Director indicated that this was not part of the input he provided to Naval Support Activity South Potomac. *Id*. at 141-43. He therefore implied that the "self-admitted [PTSD], and severe anxiety" referenced in the Naval Support Activity South Potomac second debarment letter was something that outside entity had discovered and relied upon independently.

Based on this and other evidence, we do not find that the appellant has proven that the agency's removal action was improperly motivated by a disability. Although the appellant may have informed agency officials that he has PTSD in the period between his October 2019 altercation and the February 2020 proposal to remove him from service, there is not preponderant evidence that the appellant's purported PTSD motivated his removal. Instead, we find it more likely than not that the proposal and decision to remove the appellant were based solely on his increasingly unacceptable behavior, which had just culminated in his most unacceptable outburst to date.

The agency's choice of penalty was reasonable.

The appellant presents a brief argument about the agency's chosen penalty. PFR File, Tab 12 at 70-71. Where all of an agency's charges are sustained, as they are here, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 12 (2014). In making this determination, the Board must give due weight to the agency's primary discretion in maintaining

employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id*. The Board will modify or mitigate an agency-imposed penalty only where it finds the agency failed to weigh the relevant factors or the penalty clearly exceeds the bounds of reasonableness. *Id*.

The administrative judge recognized this standard and found that the agency met its burden of proving that removal was a reasonable penalty. ID at 46-48. On review, the appellant briefly disagrees. PFR File, Tab 12 at 70-71. He seems to suggest that although the deciding official considered the appellant's asserted PTSD and did not find it mitigating due to the lack of supportive evidence, the record includes uncontested testimony about his PTSD, so we should find it mitigating. *Id*. The appellant further asserts that the incidents relied upon for removing him did not warrant that penalty, given his lengthy military and civilian service with successful performance. *Id*.

We have considered these arguments but do not find them persuasive. The appellant has not shown that the agency failed to consider the relevant factors or that removal clearly exceeds the bounds of reasonableness. To the contrary, we find that the mitigating circumstances the appellant asserted do not outweigh other considerations, such as the nature and seriousness of his misconduct, the repetitiveness of his inability to get along with others, his limited rehabilitation potential, and his lack of remorse. *E.g.*, IAF, Tab 5 at 46-53.

<u>The administrative judge did not abuse her discretion by disallowing certain witnesses.</u>

The appellant's final argument on review concerns the administrative judge's rulings as to requested witnesses. PFR File, Tab 12 at 71. As detailed in a prehearing conference summary, the appellant requested 18 witnesses. IAF, Tab 21 at 10. The administrative judge decided that three would not be allowed, over the appellant's disagreement and objection. *Id*.; IAF, Tab 22 at 9-10.

On review, the appellant reasserts his objection to the administrative judge's ruling as to these three requested witnesses. PFR File, Tab 12 at 71. He presents a cursory explanation for two, but none for the other. *Id*. We have reviewed this argument, as well as the appellant's original explanations of their expected testimony and his subsequent objection to their disallowance raised below. IAF, Tab 16 at 31-33, Tab 22 at 9-11. After doing so, we are not persuaded.

Administrative judges have broad discretion to regulate the proceedings before them, including the discretion to exclude witnesses. *Oulianova v. Pension Benefits Guarantee Corporation*, 120 M.S.P.R. 22, ¶ 12 (2013). We discern no basis for concluding that the administrative judge's disallowance of the three witnesses identified was an abuse of that broad discretion.

To conclude, the appellant's petition for review reasserts his claims of harmful error, whistleblower retaliation, and disability discrimination, while also presenting arguments about the reasonableness of the penalty and the administrative judge's disallowance of witnesses.[12] PFR File, Tab 12 at 42-71. Although we have modified the initial decision in some ways, we find that the appellant's petition presents no basis for us to reach a different result, and we affirm the administrative judge's initial decision.

---

[12] The appellant did not reassert his EEO reprisal claim on review. We note, though, that the administrative judge's analysis referred to both the "motivating factor" standard we previously discussed and a "genuine nexus" requirement. ID at 24-27; *supra* p. 25. During the period that followed the initial decision in this appeal, the Board clarified the proper standard for claims of EEO reprisal, noting that the standard differs depending on whether the claim arises under Title VII or the ADA. The motivating factor standard applies to claims of reprisal for engaging in activity protected under Title VII, while an appellant must prove the more stringent "but-for" causation in the context of retaliation claims arising under the ADA. *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 31.

To the extent that the administrative judge may have applied the wrong analytical standard, we do not find the error harmful. She made well-reasoned findings of fact that support a conclusion that the appellant's prior EEO activity, all of which occurred more than 5 years before his removal, was neither a motivating factor nor the but for cause of his removal. ID at 25-27.

## NOTICE OF APPEAL RIGHTS[13]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[14] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.